# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

CHELSEA FAMILY PHARMACY, PLLC,      )
individually and on behalf of all others similarly   )
situated,                                            )
                                                     )
                        Plaintiff(s),                )        Case No. 06-CV-118-TCK-SAJ
                                                     )
vs.                                                  )
                                                     )
MEDCO HEALTH SOLUTIONS, INC.,                        )
                                                     )
                        Defendant(s).                )

## REPORT AND RECOMMENDATION

Currently pending before the Court is the motion by Defendant Medco Health Solutions, Inc. to stay and brief in support.  [Docket No. 27].  The Court has reviewed the motion and briefs, considered the arguments of counsel, and reviewed the cases referenced by the parties.  The Court recommends that the District Court deny the motion for a stay of this action.  [Docket No. 27].

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This action was filed by Chelsea Family Pharmacy, PLLC ("Chelsea") on February 22, 2006.  [Docket No. 1].  Plaintiff filed a First Amended Complaint on May 19, 2006. [Docket No. 21].  In the Complaint, Chelsea alleges that Defendant is a third party prescription program administrator.  Chelsea alleges that Defendant entered contracts with Plaintiff and the proposed class for reimbursement rates  are less than the prevailing rates paid by ordinary consumers for the same pharmaceutical drugs.  [Docket No. 21, ¶5, 19]. Plaintiff alleges that Defendant's contracts do not permit Plaintiff to provide more than a 30 day supply of drugs to consumers.  [Docket No. 21, ¶ 20].  Plaintiff alleges that Defendant

operates mail order pharmacies with more favorable terms to consumers, and that Defendant directly solicits members from Plaintiff.  [Docket No. 21, ¶ 21, 22].  Plaintiff alleges a class action which includes all pharmacies in Oklahoma who have a contract that is or was effective during the three years preceding the filing of the Amended Complaint. [Docket No. 21, ¶ 25].  Plaintiff alleges that the reimbursement rates are less than the prevailing rates by consumers for same or similar goods and services in violation of Oklahoma's Third Party Prescription Act.  [Docket No. 21, ¶ 30, 31].  Plaintiff alleges that Defendant's failure to properly reimburse Plaintiff for prescription medications is a breach of contract.  [Docket No. 21, ¶35].  Plaintiff alleges that Defendant's failure to offer Plaintiff the same opportunities offered mail order enrollees is a breach of contract.  [Docket No. 21, ¶35].  Plaintiff alleges that the restrictions placed on Plaintiff by Defendant is an unfair business practice.  [Docket No. 21, ¶39].

Defendant moves to stay the action and permit arbitration pursuant to the Federal Arbitration Act ("FAA").  [Docket No. 27].  Defendant maintains that arbitration is mandatory pursuant to the contract and a stay of this action is therefore warranted.  Plaintiff contends that the contract was an adhesion contract, that arbitration on all of the claims brought by Plaintiff was not mandated, and that the motion to stay should be denied.  [Docket No. 35].

Based on the pending motion to stay the action, and because no discovery was specified by the parties as necessary to the motion to stay the proceeding, the United States Magistrate Judge stayed discovery in this action on September 22, 2006.  [Docket No. 48].  Pursuant to the request of the parties, all parties were given additional briefing time for the issues relative to the motion to stay.  [Docket No. 48].  Subsequent briefs, including Plaintiff's Supplemental Response, Defendant's Supplemental Reply, Plaintiff's

Sur-Response and  Defendant's Reply to Sur-response have been filed by the parties and fully reviewed by the courts.

## II.    ARBITRATION FAVORED

Both federal and state law evidence a strong public policy favoring arbitration of disputes.  *See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).  *See also Rollings v. Thermodyne Indus., Inc.*, 910 P.2d 1030, 1033 (Okla. 1996) ("Arbitration allows for speedy and less costly resolution of conflicts.").  Although the present action is a diversity case in which a federal court generally applies state substantive law, the Oklahoma Uniform Arbitration Act ("OUAA") is in accord with the FAA. *See* 15 Okla. Stat. §§ 801-818.  In addition, the Tenth Circuit has recognized that the FAA preempts state law, even in diversity cases, where the arbitration clause is in "a contract evidencing a transaction involving commerce . . . among the several states."  *See* 9 U.S.C. §§ 1 & 2.  *See also Foster v. Turley*, 808 F.2d 38, 40 (10th Cir. 1986) ("If Arbitration Act is applicable, federal law governs enforcement of and challenges to arbitration award, even in diversity cases.") (*citing Prima Paint Corp. v. Conklin Mfg. Co.*, 388 U.S. 395, 401-05 (1967)).

In *Foster*, the Tenth Circuit Court or Appeals noted that "Congress enacted the Arbitration Act to ensure that the courts uphold privately made agreements to arbitrate. . . . Contracts to arbitrate are not to be undermined by allowing one party to ignore the contract and resort to the courts."  *Foster*, 808 F.2d at 41-42 (*citations omitted*).  Thus, the FAA creates a "body of substantive federal law on arbitration governing any agreement within the Act's coverage." *Id.* at 40.  The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*See* 9 U.S.C. § 3.  Accordingly, the elements necessary to invoke the stay provision of the FAA and compel a controversy to arbitration are as follows:

(1)  An agreement in writing for arbitration;
(2)  A contract evidencing a transaction involving commerce among the several states;
(3)  An issue referable to arbitration and the court's satisfaction that the issue involved is referable to arbitration under the agreement;
(4)  An application by one of the parties to stay the proceedings; and
(5)  The applicant for a stay of proceedings is not in default with such arbitration.

*See* 9 U.S.C. §§ 1-3.

The OUAA similarly applies to a "written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties."  *See* 15 Okla. Stat. § 802 ("Such agreements are valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract.").  Under OUAA § 803, the court shall order the parties to proceed with arbitration "[o]n application of a party . . ., and the opposing party's refusal to arbitrate."  15 Okla. Stat. § 803.

-- 4 --

In this action the contract does contain a provision governing arbitration.  The arbitration clause[1/] provides:

> Any controversy or claim arising out of or relating to payments to Pharmacy by Medco or audit issues, but not relating to termination of Pharmacy's Agreement with Medco or Pharmacy's Termination from Medco's Networks, that are not settled by the parties will be determined by arbitration involving three arbitrators, venued in Bergen County, New Jersey, in accordance with the Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrators may be entered in any court having jurisdiction thereof.  Any award of the Arbitrators will include reasonable costs and reasonable attorney's fees of the prevailing party. No award of the Arbitrators will prohibit Medco from exercising any rights Medco may have pursuant to its Agreement with Pharmacy or pursuant to law.  No party will have a claim in arbitration or otherwise against the other for punitive or consequential damages or for loss of profits.

[Docket No. 27-6, at 26].

It is well settled that a Stay to pursue arbitration will only be granted when five prerequisites are met: "a written arbitration agreement; a contract evidencing a transaction involving interstate commerce; an issue referable to arbitration established to the court's satisfaction; an application by a party to stay the proceedings; and the party seeking the stay is not in default with such arbitration."  *Cason v. Conoco Pipeline Co.,* 280 F.Supp.2d 1309, 1320 (N.D. Okla. 2003).

The parties do not dispute that the existence of the contract or the arbitration clause.  Plaintiff does argue that the issues involved in this action are not referable to arbitration for a variety of reasons.

---

[1/]        The agreements submitted by the parties include an Application signed by Plaintiff and a copy of a Pharmacy Agreement signed by Plaintiff and Defendant.  The Pharmacy Agreement states that the Pharmacy Services Manual is "incorporated by reference as if fully set forth herein."  The arbitration clause appears in the Pharmacy Services Manual.  *See* [Docket No. 27-2, declaration of G. William Strein].

### III.   WHETHER COMPLAINT IS GOVERNED BY THE ARBITRATION CLAUSE

Plaintiff initially asserts that the allegations in Plaintiff's complaint are not within the scope of the arbitration clause.   Plaintiff notes that its claims include a violation of Oklahoma's Third Party Prescription Act, breach of contract, unfair business practices, and a request for injunctive relief.

In *Cummings v. Fedex Ground Package System, Inc.*, 404 F.3d 1258 (10th Cir. 2005), the Tenth Circuit Court of Appeals discussed the appropriate analysis in determining whether an arbitration clause applies to a particular dispute or issue.

> "To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry."
>
> > First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow.  next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause.  *Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview.* Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Cummings*, 404 F.3d at 1261 (*citations omitted; emphasis in original*).   In addition, "arbitration is a matter of contract and a party cannot be required to submit to arbitration

-- 6 --

any dispute which he has not agreed so to submit." *Cummings*, 404 F.3d at 1262, *citing AT&T Techs, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986).

In *Cummings*, the arbitration clause provided that in the event that the Defendant terminated the agreement, then a disagreement between the parties was subject to arbitration.  The Court interpreted the provision as a narrow clause.

> Here, as the district court ruled, we are presented with a narrowly drawn arbitration clause.  It is not the type of broad provision that "refer[s] all disputes arising out of a contract to arbitration."  *Id.*  Rather, the parties clearly manifested an intent to narrowly limit arbitration to specific disputes regarding the termination of the Operating Agreement.  In construing the scope of a narrow arbitration clause, we must take care to carry out the specific and limited intent of parties.  Under a narrow arbitration clause, a dispute is subject to arbitration only if it relates to an issue that is on its face within the purview of the clause, and collateral matters will generally be beyond its purview.

*Cummings*, at 1262 (*citations omitted*).

Defendant refers the Court to several cases which Defendant asserts support a broad interpretation of the arbitration clause language "arising out of or relating to payments" as including Plaintiff's claims.  In *Amoco Gas Co. v. MG Intrastate Gas Corp.*, 914 S.W.2d 156 (Court of Appeals of Texas, Houston 1995), the Court analyzed the scope of an agreement that included the language, "any controversy or claim relating to quantities of natural gas or to payments under this Agreement. . . ."  *Id.* at 157.  The Court construed "any" and "relating to" as inclusive rather than exclusive words and enforced the arbitration agreement.  Unlike the provision in this agreement, however, the arbitration clause in *Amoco* included any claim relating to natural gas _or_ payments under the Agreement.

Certainly the language in the *Amoco* case is broader that the agreement presented in this action.

In *Coregis Ins. Co. v. American Health Foundation, Inc., et al.*, 241 F.3d 123 (2nd Cir. 2001), the Second Circuit Court of Appeals discussed the term "related to."

> The term "related to" is typically defined more broadly and is not necessarily tied to the concept of a causal connection. Webster's Dictionary defines "related" simply as "connected by reason of an established or discoverable relation." Webster's Third New International Dictionary, *supra*, at 1916. the work "relation," in turn, as "used especially] in the phrase 'in relation to,'" is defined as a "connection" to or a "reference" to. *Id.* at 1916. Courts have similarly described the term "relating to" as equivalent to the phrases "in connection with" and "associated with," *see Jackson v. Lagan*, 270 So.2d 859, 864 (La. 1972), and synonymous with the phrases "with respect to," and "with reference to," *see Phoenix Leasing, Inc. v. Sure Broad., Inc.*, 843 F. Supp. 1379, 1388 (D. Nev. 1994), *afield*, 89 F.3d 846 (9th Cir. 1996), and have held such phrases to be broader in scope than the term "arising out of." *See Jackson*, 270 So.2d at 864 ("'In connection with' is a broader term than 'arising out of the use of the premises for the purposes of' a service station. . . .").

*Coregis*, 241 F.3d at 129 (2nd Cir. 2001) (*citations included*).

Plaintiff asserts that Plaintiffs' claims are not the type of claims contemplated by the arbitration clause. Plaintiff notes that their allegations include the following: (1) requiring Plaintiff to agree to a contract which restricts the manner in which Plaintiff can dispense drugs and Defendant's mail order pharmacies deny Plaintiff participation in third-party prescription program; (2) Defendant's denial to Plaintiff of same benefits offered in other prescription programs is a breach of contract; (3) Defendant has engaged in unfair business practices by forcing Plaintiff into an agreement that reimburses Plaintiff for pharmaceutical goods and services at rates less than required by Oklahoma law; (4)

Defendant engaged in unfair business practices by not offering Plaintiff opportunities available to mail order pharmacies; (5) Plaintiff requests injunctive relief.  [Docket No. 35, at 5].

Defendant asserts that in each count of Plaintiff's complaint, Plaintiff alleges that the payments made by Defendant are too low.  Defendant contends that all of the claims are dependent upon the allegations relating to payments, and that arbitration is therefore mandated.

> The Tenth Circuit adheres to the principle that the court is to determine arbitrability: Where. . . the parties dispute whether an arbitration clause in a conceitedly binding contract applies to a particular type of controversy, [the question] is for the court.

*Cummings v. Fedex Ground Package System, Inc.* 404 F.3d 1258, 1261 (10th Cir. 2005).

The court in *Spahn v. Secco* held:

> It has long been a tenant of federal arbitration law that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. . . It follows that the question whether the parties have submitted a particular ;dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination.

*Spahn v. Secco,* 330 F.3d 1266, 1269 (10th Cir. 2003).

Applying the principles of the *Cummings* case, the court finds the arbitration clause in the case at bar is narrow and the dispute presented by Plaintiff's complaint falls outside the issues agreed to be submitted to arbitration.  The clause in question commits to arbitration "any controversy or claim arising out of or relating to payments to Pharmacy by Medco or audit issues. . ."  The reference to audit issues suggests that arbitration was to be a quick way to resolve any accounting dispute over the accuracy of the amount paid. The clause is further narrowed by the  language "but not relating to termination of

Pharmacy's Agreement with Medco."   Substantive disputes relating to termination are excluded even though they relate to payments owed.  Had the parties intended that the arbitration clause apply to "any and all disputes arising under this contract" they could have so stated.  They did not.  A large part of Plaintiff's complaint is directed to unfair trade practices due to Defendant's alleged failure to offer  Plaintiff the same opportunities that are offered mail order enrollees.  Other details of the Plaintiff's complaint are set forth on pages 1-2 herein.

The Plaintiff alleges other grounds in opposition to the Motion to Stay arguing that it is a contract of adhesion, is unconscionable and should not be enforced.  Supplemental briefing argues that The  McCarran-Ferguson Act precludes application of the Federal Arbitration Act.  Having found the dispute does not fall within the application of the arbitration clause,   there is no need to consider these additional arguments.

## IV.     CONCLUSION

For the above reasons, the undersigned hereby recommends that the District Court deny the Motion to Stay this action [Docket No. 27].  Upon the District Court entering an order adopting this Report and Recommendation the stay of discovery in this proceeding shall be automatically lifted.

## V.     OBJECTIONS

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this Report and Recommendation.  Objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within 10 days of being served with a copy of this Report and Recommendation.  *See* Fed. R. Civ. P. 6 (as

to computation of time periods).  If specific written objections are timely filed, the district judge assigned to this case will

> make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b).  *See also* 28 U.S.C. § 636(b)(1).

The Court of Appeals for the Tenth Circuit has adopted a "firm waiver rule" in connection with appeals from orders adopting a Magistrate Judge's report and recommendation.  "[T]he failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property,* 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). **Thus, a timely, specific and written objection is necessary to preserve an issue for *de novo* review by the assigned district judge and for appellate review by the court of appeals.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Haney v. Addison*, 175 F.3d 1217 (10th Cir. 1999); and *Talley v. Hesse*, 91 F.3d 1411 (10th Cir. 1996).

Dated this 21st of September 2007.

Sam A. Joyner
United States Magistrate Judge